```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                           EASTERN DIVISION
```

GREAT RIVERS HABITAT ALLIANCE, and )
THE ADOLPHUS A. BUSCH REVOCABLE    )
LIVING TRUST,                      )
                                   )
            Plaintiffs,             )
                                   )
     v.                             )     No. 4:08 CV 1982 DDN
                                   )
FEDERAL EMERGENCY MANAGEMENT        )
AGENCY, DEPARTMENT OF HOMELAND      )
SECURITY, and                       )
WILLIAM R. BLANTON,                 )
                                   )
            Defendants.             )


### **MEMORANDUM**

This action is before the court on the motion of defendants Federal Emergency Management Agency (FEMA) and Department of Homeland Security (DHS) to dismiss the complaint for lack of subject matter jurisdiction. (Doc. 6.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 3.)


### **I.  BACKGROUND**

On December 23, 2008, Great Rivers Habitat Alliance and The Adolphus A. Busch Revocable Living Trust commenced this action for injunctive and declaratory relief against the defendants. (Doc. 1.) The plaintiffs challenge a determination by the defendants to revise the Flood Insurance Study report and the Flood Insurance Rate Map within St. Charles County, the City of St. Charles, and the City of St. Peters, Missouri. (Id. at ¶ 1.) The plaintiffs allege that the determination was based upon flawed scientific and technical information, and an inadequately designed and constructed levee. (Id.)

A flood insurance rate map is a map that designates special flood hazard areas and risk zones within a community. (Doc. 7, Ex. A at ¶ 3.) The National Flood Insurance Program relies on these maps to issue flood insurance polices and to calculate the premiums to charge for these

policies. (Id.) A Letter of Map Revision (LOMR) is a change to a flood insurance rate map, and is the result of physical measures (such as construction of a levee or a dam) taken to change the hydrologic or hydraulic characteristics of a flood source. (Id. at ¶ 4.) By changing the flood insurance rate map, a LOMR can change the rates for premiums on flood insurance policies. (Id.)

According to the plaintiffs' complaint, on December 29, 2006, the City of St. Peters requested a LOMR from FEMA, hoping to remove a tract of land from the Mississippi River floodplain. (Doc. 1 at ¶ 16.) The request was purportedly based on a change to the floodplain, stemming from the recent construction of an urban levee in the City of St. Peters. (Id.) The new levee in St. Peters was allegedly designed to protect against a 500-year flood. (Id.) As a result, the City of St. Peters requested a LOMR that would move the city from its current AE Zone (representing a 100-Year Flood Zone) to an X Zone (representing a 500-Year Flood Zone, or a 100-Year Flood Zone protected by a flood control structure). (Doc. 7, Ex. A at ¶ 6.)

FEMA and its contractor, however, allegedly had concerns about the levee's closure structures and its ability to protect against a 100-year flood - let alone a 500-year flood. (Doc. 1 at ¶ 17.) But despite the alleged deficiencies, FEMA issued a proposed LOMR on June 13, 2008. (Doc. 7, Ex. A at ¶ 7.) FEMA published the proposed changes in the St. Charles Suburban Journal on June 25, 2008, and on July 2, 2008, and in the Federal Register on August 12, 2008. (Id. at ¶ 8.) On September 29, 2008, the plaintiffs challenged the LOMR's determinations. (Doc. 1 at ¶ 19.) In their letter, the plaintiffs pointed to several deficiencies in the levee, particularly its closure structure and the level of its freeboard. (Id. at ¶¶ 20-21; Doc. 7, Ex. A-4.) The plaintiffs also argued that FEMA and the City of St. Peters had relied on a flawed study of the Mississippi's flow and flood tendencies. (Doc. 1 at ¶ 22; Doc. 7, Ex. A-4.)

On October 10, 2008, the mayor of the City of St. Peters, forwarded the plaintiffs' letter to FEMA, along with the city's response and comments. (Doc. 7, Ex. A at ¶ 11; Doc. 7, Ex. A-5.) In its response, the city argued that the plaintiffs had not provided the necessary

scientific or technical data, meaning the plaintiffs' letter did not legally constitute an appeal. (Doc. 7, Ex. A at ¶ 11; Doc. 7, Ex. A-5.) On October 27, 2008, FEMA determined that modifications to the LOMR were unwarranted. (Doc. 1 at ¶ 23; Doc. 7, Ex. A at ¶ 12.) The LOMR became effective on October 30, 2008, and revised the Flood Insurance Study report and the flood insurance rate map within the City of St. Charles, the City of St. Peters, and St. Charles County as of that date. (Doc. 1 at ¶ 18; Doc. 7, Ex. A at ¶ 12.)

In Count I of their complaint, the plaintiffs allege that the levee does not meet FEMA's requirements for levees, as provided in the National Flood Insurance Act (NFIA). As a result, the plaintiffs allege that FEMA's decision to issue a LOMR and the determinations within that LOMR were arbitrary and capricious, and violate FEMA's regulations. (Doc. 1 at ¶ 29.) In Count II, the plaintiffs allege that FEMA's decision to issue a LOMR and the determinations within that LOMR were arbitrary and capricious, and violate FEMA's regulations and the Administrative Procedure Act. (Id. at ¶ 31.) The plaintiffs seek to vacate FEMA's LOMR determinations from June 13, and to enjoin FEMA from issuing the LOMR until the St. Peters levee satisfies the requirements of the NFIA. (Id. at 8.)

## II. MOTION TO DISMISS

The defendants have moved to dismiss the complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). (Doc. 6.) The defendants argue that the plaintiffs' claims against the government do not fall within the limited waiver of sovereign immunity provided by the NFIA. In particular, they argue that the plaintiffs' letter did not demonstrate that FEMA's proposed flood elevations were scientifically or technically incorrect. That is, the plaintiffs' letter did not contain any supporting data, certified by a professional engineer or licensed land surveyor. The defendants make the same argument about the exhibits attached to the plaintiffs' response. Finally, the defendants argue that the court lacks subject matter jurisdiction under the Administrative Procedure Act and the other federal statutes cited by the plaintiffs. (Docs. 16, 17.)

In response, the plaintiffs argue that this court has subject matter jurisdiction. In particular, they argue that they submitted technical information to FEMA, and this data tends to show the levee system cannot provide the necessary level of protection against a 100-year flood. The plaintiffs also argue FEMA's regulations do not require them to demonstrate the estimates are incorrect, and do not require certification, because the case concerns a changed physical condition. (Doc. 11.)

### III. MOTION TO DISMISS STANDARD

In their complaint, the plaintiffs base the court's subject matter jurisdiction on 42 U.S.C. § 4104(g), a section of the NFIA. (Doc. 1 at ¶ 3.) The plaintiffs also rely on 28 U.S.C. § 1331, federal question jurisdiction; 28 U.S.C. § 1346, cases involving the United States as a defendant; 28 U.S.C. § 1361, actions to compel a United States officer to perform a duty; 28 U.S.C. §§ 2201-2202, declaratory judgments; and 5 U.S.C. § 701, et seq., the Administrative Procedure Act. (Id.) The defendants move to dismiss the complaint under Rule 12(b)(1), arguing the court lacks subject matter jurisdiction under any of the cited statutes. (Doc. 6.)

A Rule 12(b)(1) motion challenges whether the district court possesses subject matter jurisdiction necessary to hear a case. Johnson v. United States, 534 F.3d 958, 964 (8th Cir. 2008). When ruling a 12(b)(1) motion, the court must accept all factual allegations in the pleadings as true, and view those allegations in the light most favorable to the non-moving party. Hastings v. Wilson, 516 F.3d 1055, 1058 (8th Cir. 2008). The non-moving party receives the same protections in defending a motion brought under Rule 12(b)(1) as it would defending a motion brought under Rule 12(b)(6). Id.

### IV. DISCUSSION

The National Flood Insurance Act (NFIA) was passed in 1968, with the goal of creating a national flood insurance program that could pool the risk of flood losses, and encourage preventative and protective flood measures. 42 U.S.C. § 4001(a),(c). The NFIA also authorized

"continuing studies of flood hazards in order to provide for a constant reappraisal of the flood insurance program and its effect on land use requirements." 42 U.S.C. § 4001(e)(5). FEMA was the agency authorized to administer the NFIA. Orchard Hill Constr., LLC. v. Fed. Emergency Mgmt. Agency, No. 99 C 5756, 2001 WL 185188, at *1 (N.D. Ill. Feb. 26, 2001). In that role, FEMA identifies and maps flood hazard areas for each community participating in the National Flood Insurance Program and publishes flood insurance rate maps. (Id.)

Without a waiver, sovereign immunity shields the United States and its agencies from suit. F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994). "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." United States v. Mitchell, 463 U.S. 206, 212 (1983). In this case, the NFIA does not include a broad waiver of FEMA's sovereign immunity. Normandy Pointe Assocs. v. Fed. Emergency Mgmt. Agency, 105 F. Supp. 2d 822, 827 (S.D. Ohio 2000). There is no statutory provision allowing the agency to sue and be sued generally, in connection with the flood insurance program. Id. Instead, the NFIA only provides two limited waivers of sovereign immunity. Id. First, the NFIA waives FEMA's sovereign immunity for challenges to the agency's disallowance of a flood insurance claim. Id. (citing 42 U.S.C. § 4072). Second, the NFIA waives FEMA's sovereign immunity for challenges to the agency's "flood elevation determinations." Id. (citing 42 U.S.C. § 4104).

Any challenge to FEMA's flood elevation determinations must be through the proper administrative process. See 42 U.S.C. § 4104(b). Under the NFIA, any person owning or leasing real property within the community, who believes a flood elevation determination has adversely affected his property, can appeal that determination to the local government. Id. However, the appeal must occur within ninety days of the second publication of the flood elevation determination. Id.; 44 C.F.R. § 67.5. On top of that, the "sole basis for [any] such [administrative] appeal shall be the possession of knowledge or information indicating that the elevations being proposed . . . are scientifically or technically incorrect. . . ." 42 U.S.C. § 4104(b).

- 5 -

To assert that the proposed elevations are scientifically or technically incorrect, "appellants are required to demonstrate that alternative methods or applications result in more correct estimates of base flood elevations. . . ." 44 C.F.R. § 67.6(a). This requirement demands that the appellant provide actual data, particularly since scientific and technical correctness is often a matter of degree, rather than an absolute. 44 C.F.R. § 67.6(a),(b). Supporting data is required where the appellant believes the flood elevations are incorrect due to changed physical conditions. 44 C.F.R. § 67.6(b)(1).

> If an appellant believes the proposed base flood elevations are technically incorrect due to a mathematical or measurement error or changed physical conditions, then the specific source of the error must be identified. Supporting data must be furnished to FEMA including certifications by a registered professional engineer or licensed land surveyor, of the new data necessary for FEMA to conduct a reanalysis.

Id. (emphasis added).

The regulations demand similar data and certifications for appellants challenging proposed flood elevations due to scientific incorrectness, technical errors, or errors in the application of hydrologic or hydraulic methods. 44 C.F.R. § 67.6(b)(2),(b)(3); see also Robinson v. Fed. Emergency Mgmt. Agency, Civ. A. No. 86-1770-MA, 1987 WL 9906, at *1 (D. Mass. Apr. 7, 1987).

The federal register provides further background for the type of data envisioned by the regulations. 48 Fed. Reg. 31642, 31643 (July 11, 1983) (final rule). According to the final rule, the primary purpose of the regulations "is to encourage appellants to develop more detailed data and analyses." Id. As a result, the appellants bear the burden of providing evidence of scientific and technical inaccuracies. Id. Submission of an alternative methodology or data does not satisfy this burden, because there are usually several possible approaches for estimating base flood elevations. Id. Simply put, appellants must "demonstrate that FEMA's determinations are incorrect by providing an alternative application or analysis shown to produce more accurate results." Id. at 31642.

If an aggrieved appellant satisfies these administrative procedures, the appellant can appeal any final determination to the United States District Court for the district within which the community is located. 42 U.S.C. § 4104(g); 44 C.F.R. § 67.12(a). However, if the appellant fails to comply with these statutory requirements, the district court lacks subject matter jurisdiction, and the case must be dismissed. City of Biloxi, Miss. v. Giuffrida, 608 F. Supp. 927, 931 (S.D. Miss. 1985); City of Trenton v. Fed. Emergency Mgmt. Agency, 545 F. Supp. 13, 17 (E.D. Mich. 1981). Exhaustion of the administrative review process is a prerequisite to judicial review. Normandy Pointe Assocs., 105 F. Supp. 2d at 827-28. These limitations on appeals were the product of more congressional debate and testimony than any other portion of the NFIA. Reardon v. Krimm, 541 F. Supp. 187, 189 (D. Kan. 1982); City of Trenton, 545 F. Supp. at 16.

The central question in this case now is whether the plaintiffs exhausted the administrative appeals process. Subsumed within this question is the issue of whether the plaintiffs challenged the flood elevations on the basis of their scientific and technical accuracy, as required by 42 U.S.C. § 4104(b). See Robinson, 1987 WL 9906, at *2 (finding plaintiff's correspondence failed to include "analysis and data with full justification and documentation that would enable the FEMA to revise its proposed base flood elevations."); City of Biloxi, Miss., 608 F. Supp. at 931 (finding the four allegations that formed the basis of plaintiff's appeal "went unsubstantiated without any scientific or technical evidence being submitted to question the [flood insurance] study's accuracy."); Reardon, 541 F. Supp. at 189 (finding plaintiff "did not base its objections on scientific or technical evidence," and did not question the scientific or technical accuracy of any agency determination).

In Robinson, the plaintiff filed suit in federal court, challenging FEMA's decision to modify the base flood elevations for the Town of Wayland, Massachusetts. Robinson, 1987 WL 9906, at *1. Before filing his federal lawsuit, Robinson challenged the agency's decision in a letter to the city. Id. FEMA responded to the letter, and subsequently made the flood elevations final. Id. Robinson challenged this final

agency determination in the district court. Id. at *2. The court noted that Robinson's correspondence with FEMA and the city diligently criticized the agency's flood level revision, raised "many probative questions regarding technical and procedural aspects of the revision, and [sought] clarification and further information with respect to the revision. . . ." Id. Yet, fatally, none of Robinson's correspondence included any analysis or data with the necessary documentation that would enable FEMA to revise its base flood elevations. Id. Robinson's letters simply did not "contain scientific or technical information demonstrating the inaccuracy of the proposed flood elevations," as required by § 4104(b) and 44 CFR § 67.6(b). Id. As a result, the district court concluded there was no appeal at the administrative level, and dismissed the plaintiff's complaint for lack of subject matter jurisdiction under § 4104(g).[1] Id.

In this case, the plaintiffs challenged the LOMR on four different grounds at the administrative level. (Doc. 7, Ex. A-4.) But like Robinson, the plaintiffs' arguments centered around technical and procedural aspects of the revision; their arguments did not present any scientific or technical information demonstrating the inaccuracy of the proposed flood elevations. In their first ground, the plaintiffs argued the closure plan for the levee did not meet the agency's requirement that the closure device be a structural part of the levee. (Id. at 2.) In support of this claim, the plaintiffs cited to five exhibits. (Id.) (citing Doc. 11, Exs. 1-5.) However, these five exhibits contain nothing but blanket conclusions and recommendations. (See Doc. 11, Exs. 1-5.) The exhibits do not contain any scientific or technical data, or any certifications by a professional engineer or land surveyor. (See id.) The City of St. Peters noted these deficiencies in its response. (Doc. 7, Ex. A-5 at 3.) The City of St. Peters also noted that FEMA's professional engineers had certified that the levee complied with the agency's structural requirements. (Id.) (citing 44 C.F.R. § 67.6(b)(1)).

---

[1]The court decided Robinson on a motion to dismiss, that it converted into a motion for summary judgment. Robinson, 1987 WL 9906, at *1.

In their second ground, the plaintiffs argued that the levee did not provide the necessary freeboard level. (Doc. 7, Ex. A-4 at 3.) In support of this claim, the plaintiffs cited to three exhibits. (Id.) (citing Doc. 11, Exs. 4, 7, 8.) Exhibit 7 is letter from the National Flood Insurance Program to the Mayor of the City of St. Peters, and is the only exhibit that contains any technical data. (Doc. 11, Ex. 7 at 5.) However, there is only one table of data, and the data was provided to the city by the agency. (Id.) Exhibits 4 and 8 do not contain any data. (See Doc. 11, Exs. 4, 8.) In response to the plaintiffs' challenge, the City of St. Peters responded that the levee grades provide the requisite level of protection. (Doc. 7, Ex. A-5 at 5.) A few weeks after the city's response, FEMA wrote to the Mayor of the City of St. Peters, and stated that the city's Operations and Maintenance Manual indicated "sandbags will be placed up to the required level of freeboard. . . ." (Doc. 11, Ex. 12 at 4.)

In ground three, the plaintiffs argued the city's Operations and Maintenance Manual did not follow required procedures for maintenance activities, or follow the guidelines established for levee closures. (Doc. 7, Ex. A-4 at 4.) In support of this claim, the plaintiffs only cited to the Manual itself. (Id.) (citing Doc. 11, Ex. 6.) The plaintiffs did not cite to any outside documents. (See id.) In response, the City of St. Peters argued that its Manual followed the required agency regulations. (Doc. 7, Ex. A-5 at 6-7.) Regardless, this issue did not implicate any scientific or technical data.

In ground four, the plaintiffs argued that the City of St. Peters should not have relied on a document entitled "Upper Mississippi River System Flow Frequency Study." (Doc. 7, Ex. A-4 at 5.) The plaintiffs argued that the study was flawed, and that it manipulated or underestimated certain risks. (Id.) In support of their argument, the plaintiffs attached a review of the study. (Doc. 11, Ex. 10.) This review, a "Technical Review of the Upper Mississippi River Flow Frequency Study," does not speak to the LOMR at issue, and thus, does not contain "more correct estimates" of the base flood elevations. The Technical Review also does not include any certified supporting data. (See Doc. 11, Ex. 10.) Most importantly, though, the City of St. Peters

responded that FEMA never relied on the Flow Frequency Study in making its LOMR determination. (Doc. 7, Ex. A-5 at 8). FEMA confirmed this statement: "The Upper Mississippi River System Flow Frequency Study performed by the USACE [United States Army Corps of Engineers] was not used as part of this LOMR request." (Doc. 11, Ex. 12 at 5.)

During the administrative proceedings, the plaintiffs did not challenge the flood elevations on the basis of their scientific and technical accuracy. Under Robinson, 42 U.S.C. § 4104(b), and 44 C.F.R. § 67.6, the plaintiff's correspondence with FEMA and the City of St. Peters did not constitute an administrative appeal. Absent the requisite administrative appeal, the National Flood Insurance Act cannot serve as a basis for the court's subject matter jurisdiction. 42 U.S.C. § 4104(g); Robinson, 1987 WL 9906, at *2; City of Biloxi, Miss., 608 F. Supp. at 931 (noting the court "lacks subject matter jurisdiction to review the City of Biloxi's attempted appeal of FEMA's decision").

**Other Bases for Subject Matter Jurisdiction**

The plaintiffs rely on several other statutes in support of subject matter jurisdiction. Section 1331 provides that the "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. However, § 1331 merely establishes a subject matter – federal questions – that federal courts are competent to hear. Normandy Pointe Assocs., 105 F. Supp. 2d at 832-33. Section 1331 does not, on its own, provide a substantive basis for subject matter jurisdiction. Id.

The same is true of the Declaratory Judgment Act. Id. Sections 2201 and 2202 give federal courts the power to issue declaratory judgments when jurisdiction otherwise exists. Id. But these sections do not, on their own, provide a basis for subject matter jurisdiction. Id.

Section 1346 concerns cases where the United States is a defendant, and vests the district courts with original jurisdiction in certain circumstances. 28 U.S.C. § 1346(a). Section 1346(a)(1) provides original jurisdiction for any action against the United States to recover erroneously collected taxes. 28 U.S.C. § 1346(a)(1). Section

1346(a)(2) provides original jurisdiction if the claim seeks money damages from the United States, not exceeding $10,000, and is based on a contract or provision of federal law. Van Drasek v. Lehman, 762 F.2d 1065, 1068 (D.C. Cir. 1985). Section 1346(b) provides the district courts with exclusive jurisdiction for monetary claims, based on injury or property loss, caused by the negligence of a United States employee. 28 U.S.C. § 1346(b)(1); Dorking Genetics v. United States, 76 F.3d 1261, 1264 (2d Cir. 1996). Because the plaintiffs do not seek monetary damages from the United States, or seek to recover tax revenue from the government, 28 U.S.C. § 1346 does not provide subject matter jurisdiction. See Bobula v. United States Dep't of Justice, 970 F.2d 854, 856 (Fed. Cir. 1992).

The Mandamus Act provides that district courts "shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. A writ of mandamus is only appropriate if the plaintiff can establish a "clear and indisputable right to the relief sought," the defendant has a nondiscretionary duty to honor that right, and the plaintiff has no other adequate remedy. Castillo v. Ridge, 445 F.3d 1057, 1061 (8th Cir. 2006); Mohammed v. Frazier, Civ. No. 07-3037 RHK/JSM, 2008 WL 360778, at *8 (D. Minn. Feb. 8, 2008). In this case, the plaintiffs have not shown that they have a clear and indisputable right to the relief sought. As a result, the plaintiffs may not rely on the mandamus statute as a basis for subject matter jurisdiction. See Bobula, 970 F.2d at 856.

Finally, the plaintiffs claim subject matter jurisdiction under the Administrative Procedure Act (APA). The APA provides for judicial review of a final agency action "for which there is no other adequate remedy in a court. . . ." 5 U.S.C. § 704; Sierra Club v. United States Army Corps of Eng'rs, 446 F.3d 808, 813 (8th Cir. 2006). Where the limited waiver found in 42 U.S.C. § 4104(g) and 44 C.F.R. § 67.12 is inapplicable, then the APA provides a basis of subject matter jurisdiction for the plaintiffs' actions. Orchard Hill Constr., 2001 WL 185188, at *7.

In this case, the plaintiffs based subject matter jurisdiction under § 4104(g). (Doc. 1 at 2.) That section provides plaintiffs a procedure by which to challenge agency determinations. 42 U.S.C. § 4104(g). It makes no difference, in terms of the APA, whether a plaintiff will actually be entitled to relief under § 4104. See Mitchell v. United States, 930 F.2d 893, 897 (Fed. Cir. 1991). "[T]he question posed by APA Section 704 is whether the [court] offers adequate remedies, not whether [the plaintiff] will be entitled to receive those remedies." Id.; see also Town of Sanford v. United States, 140 F.3d 20, 23 (1st Cir. 1998) ("A legal remedy is not inadequate for purposes of the APA because it is procedurally inconvenient for a given plaintiff, or because plaintiffs have inadvertently deprived themselves of the opportunity to pursue that remedy."). Section 4104(g) provided the plaintiffs an adequate legal remedy, and it makes no difference that the plaintiffs were ultimately unable to take advantage of that available remedy. Under Mitchell and Town of Sanford, the plaintiffs cannot rely on the APA to provide subject matter jurisdiction. Town of Sanford, 140 F.3d at 23; Mitchell, 930 F.2d at 897.

## V. CONCLUSION

For the reasons stated above, the plaintiffs have not established any basis for the court's subject matter jurisdiction. As a result, the motion of defendants Federal Emergency Management Agency and the Department of Homeland Security to dismiss the complaint for lack of subject matter jurisdiction (Doc. 6) is sustained and the action is dismissed. An appropriate Order is issued herewith.

      /S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on July 23, 2009.